**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KMAG Holdings Group, Inc.,** *et al.***,** | ) | **CASE NO. 1:15 CV 66** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **J. Phillip Chubb Ins. Agency,** *et al.***,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Lexington Insurance Company's Motion for Summary Judgment (Doc. 26).  This is an insurance coverage case.  For the reasons that follow, the motion is GRANTED.  In addition, Lexington's request for judicial notice is UNOPPOSED and GRANTED.

**FACTS**

1

The facts of this case are largely undisputed.  Plaintiffs, Dr. Amgad William Abdou and Albair Guirguis (collectively "Abdou"), bring this lawsuit against defendants, J. Phillip Chubb Insurance Agency, J. Phillip Chubb, (collectively "Chubb") and Lexington Insurance Company ("Lexington") seeking coverage for serious injuries sustained by Abdou on an inflatable obstacle course located at Pump It Up Avon ("Pump It Up").[1]

Pump It Up is a family entertainment business.  The Family Entertainment Centers Safety Association ("FECSA") operates a program in which its members can purchase insurance.  Each business is able to elect different types of coverage, including general commercial liability and umbrella coverage.  FECSA's insurance program was administered by Sterling & Sterling, Inc. ("Sterling").  Sterling in turn obtained coverage from CRC Insurance Services, Inc. ("CRC").  CRC is a wholesale producer of insurance.  Entities electing to participate in FECSA's program received commercial general liability coverage under policies issued by Interstate Fire and Casualty Company.  Entities electing umbrella coverage, however, did not receive individual policies.  Rather, coverage arose based on a master umbrella policy issued to FECSA.

In 2010, Pump It Up was owned by Mullikin.  On September 22, 2010, Sterling sent Mullikin and Chubb, an insurance agent, a renewal quotation for both commercial general liability and umbrella coverage.  On November 1, 2010, Chubb faxed Pump It Up's coverage

---

[1] This case was originally brought by plaintiffs KMAG Holdings Group, Inc., Michael Davies, Mullikin Management, LLC, Michael Mullikin (collectively, "Mullikin"), PIU Holdings, LLC, and PIU Management, LLC. Abdou and Guirguis were named as defendants.  In considering a motion to remand, the Court realigned the parties so that Abdou and Guirguis are considered plaintiffs.  Subsequently, as a result of various assignments made in conjunction with underlying litigation, the Court substituted Abdou and Guirguis for the remaining plaintiffs.

selections to Sterling. The form reads as follows:

- ☒ I accept the General Liability coverage for the above limits at the stated premium

- ☒ I accept the Property coverage for the above limits at the stated premium

- ☐ I accept the Umbrella coverage for the above limits at the stated premium

- ☒ I accept the Accident & Health coverage for the above limits at the stated premium

- ☒ I agree to pay the above noted Risk Purchasing Group Fee

Not only is the umbrella coverage option not selected, there is a line drawn through the middle of that entire third statement. In addition, Chubb testified that he was instructed by Mullikin to reject umbrella coverage because it was no longer a franchise requirement. Various documents show differing premiums due. Chubb testified, however, that Mullikin never paid a premium for such umbrella coverage. (Chubb Dep. at 117)[2]. There is no evidence to the contrary. The parties do not appear to dispute that absent a renewal of the umbrella policy, coverage under the earlier umbrella policy would have ended effective October 27, 2010.

In the fall of 2010, KMAG began negotiations to purchase Pump It Up from Mullikin. The sale was completed on December 23, 2010. KMAG purchased all of the assets from Mullikin, including any existing insurance coverage.

Although Mullikin declined coverage and paid no premium, Chubb sent three certificates

---

[2]   Abdou points out that the financing agreement shows the premium to include umbrella coverage. As Chubb testified, however, Millikin paid the lower amount, which did not include the umbrella policy.

3

of insurance which show that umbrella coverage from Lexington exists. Two certificates pre-date the sale of Pump It Up and one is dated January 24, 2001. Chubb testified that he mistakenly listed umbrella coverage from Lexington because he carried over previous years' coverage information in preparing the certificates. Chubb further testified that the certificates are inaccurate. The certificates all provide as follows:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

Shortly after the purchase, KMAG became concerned regarding the existence of coverage because the coverage was not in KMAG's own name. In response, Chubb sent KMAG an email indicating:

> I have done business with PIU facilities for over 10 years-I would NEVER allow a franchisee to be without insurance. I should have the endorsements from Sterling first thing in the morning. I would have them sooner but they are in New York and closed for the day. BTW, **the insurance certificate is·a legal binding/agreement that the coverages are in place**.
> J Chubb

(Emphasis added).

Abdou suffered serious injuries at Pump It Up on May 29, 2011.

Thereafter, Abdou filed a six-count complaint. Counts five and six are the only counts asserted against Lexington. Count five is a claim for breach of contract and count six seeks a declaratory judgment. Lexington moves for summary judgment and Abdou opposes the motion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010,

4

provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remain unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

5

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **ANALYSIS**

Lexington argues that summary judgment is warranted because there is no evidence that coverage exists.  Rather, the undipsuted evidence shows that Millikin rejected umbrella coverage and did not pay any premium for such coverage.  Thus, when Millikin sold Pump it Up to KMAG, no umbrella coverage transferred because none existed.  Lexington also argues that

6

Chubb has no actual or apparent authority to bind Lexington.  Thus, any error Chubb may have made in connection with issuing the certificates does not bind Lexington to provide coverage.  In response, Abdou argues that coverage exists as a result of the certificates.  Abdou also claims that Chubb is Lexington's agent by statute.  In the alternative, a question of fact exists as to whether Chubb is Lexington's agent.

Chubb testified that Millikin rejected umbrella coverage and never paid a premium for any such coverage.  Chubb further testified that he mistakenly issued the certificates.  Although KMAG offers an affidavit from its president indicating that umbrella insurance transferred upon the sale of Pump it Up, it is axiomatic that an owner cannot transfer to a purchaser that which it does not own.  Here, the undisputed evidence shows that Millikin did not purchase umbrella coverage from Lexington.  Therefore, no coverage existed at the time KMAG purchased Pump it Up.  The Court now turns to whether a reasonable juror could conclude that Chubb was Lexington's agent with regard to the issuance of the certificates.

Although not expressly arguing as such, it appears that Abdou may be claiming that a separate contract arose when Chubb issued KMAG a certificate of insurance showing the existence of such coverage.  In response, Lexington argues that the only way that liability could arise is based on a theory of agency.

Abdou argues that liability exists pursuant to  O.R.C. § 3929.17, which provides:

A person who solicits insurance and procures the application therefor shall be considered as the agent of the party, company, or association thereafter issuing a policy upon such application or a renewal thereof, despite any contrary provisions in the application or policy.

Abdou argues that pursuant to this provision, Chubb is deemed to be Lexington's agent with respect to umbrella coverage.  The Court rejects this argument and agrees with Lexington

7

that the provision is inapplicable. On its face, O.R.C. § 3929.17 states that the person procuring an application for insurance is deemed an agent of the party issuing the insurance policy. Here, however, Lexington did not issue a policy because Millikin rejected coverage. The "application," wherein the "umbrella" coverage box is not checked and is in fact crossed out, clearly shows that Millikin did not elect coverage. Further, there is no indication that KMAG ever applied for insurance and no policy was issued to KMAG. Nor is there any evidence that KMAG ever paid a premium for such coverage. Therefore, O.R.C. § 3929.17 is inapplicable.

The Court now turns to whether a reasonable juror could conclude that Chubb is Lexington's agent pursuant to traditional principles of agency law. Abdou argues that sufficient evidence exists to show that Chubb was Lexington's actual agent. Alternatively, Abdou argues that Chubb had apparent authority to bind Lexington when it issued the certificates. Lexington disputes both of these arguments and claims that no evidence exists with regard to either theory of agency.

Under Ohio law, the mere fact that "one undertakes to make a contract as agent for a party...does not necessarily result in such party being bound by the contract made." *Miller v. Wick Bldg. Co.*, 93 N.E.2d 467 (Ohio 1950), *syll. ¶ 1*. Rather, in order to enforce the terms of a contract entered into by an agent, "it is necessary to establish that the one who assumed to act as agent for that party had power to make the contract for that party." *Id*.

Actual authority can be either express or implied. *See Zona v. Lincoln Log Homes, Inc.*, 1999 WL 282666, at *4 (6th Cir. April 30, 1999). In both instances, the court must examine manifestations of authority conveyed by the principal to the agent. *Id*. Express authority "is directly granted to or conferred upon the agent or employee in express terms by the principal,

8

and it extends only to such powers as the principal gives the agent in direct terms." *Master Consolidated Corp. v. BancOhio Natl. Bank*, 575 N.E.2d 817, 820 (Ohio 1991) (quoting *Stevens v. Frost*, 32 A.2d 164 (Me. 1943)).  An agent is authorized to do only "what it is reasonable for him to infer that the principal desires him to do in light of the principal's manifestations and the facts as he knows or should know them at the time he acts." *Id*.  A finding of implied authority, on the other hand, depends on the agent's reasonable interpretation of his own authority, as conveyed to him by the principal.

> If a party by his words or conduct, reasonably interpreted, has caused one, assuming to act as agent for such party in the making of a contract, to believe that such one had the necessary authority to make the contract, such party will be bound by the contract, regardless of whether words or conduct of such party caused the other party to the contract to believe that the one so assuming to act as agent had authority to make the contract.

*Miller*, 93 N.E.2d at *paragraph three of the syllabus*.  "[T]here can be no recovery against the principal if the agent knew that he had no authority to make the contract for the principal." *Id*. at *paragraph four of the syllabus*.  While the question of the agent's reasonable belief is ordinarily one of fact, a court may decide as a matter of law that no implied authority existed where reasonable minds could not conclude that the agent believed he had authority to enter into the contract on the principal's behalf. *Id*. at *paragraph five of the syllabus*.

Here, the Court finds that there is no evidence from which a factfinder could conclude that Chubb possessed actual authority to bind Lexington.  Chubb expressly testified that it had no authority to bind Lexington and that it was not Lexington's agent.  Rather, Chubb repeatedly testified that he was the agent of Pump It Up.  This testimony is consistent with Lexington's declarations, in which its Vice-President avers that Lexington had no contact with Chubb.

Abdou himself argues in his brief that "Chubb never directly communicated with Lexington." (Doc. 38 at p. 3). Because there is no evidence of *any* "manifestations of authority conveyed by the principal to the agent," no question of fact exists with regard to actual authority.

Unlike actual authority, a claim of apparent authority requires the court to look to manifestations of authority conveyed by the principal to the third party. *Logsdon v. Main-Nottingham Inv. Co.*, 141 N.E.2d 216, 223 (Ohio App. 2d Dist. 1956). As stated by the Ohio Supreme Court,

> Even where one assuming to act as agent for a party in the making of a contract has no actual authority to so act, such party will be bound by the contract if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.

*Miller*, 93 N.E.2d at *paragraph two of the syllabus*.

Authority to act as an agent "may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency." *Logsdon*, 141 N.E.2d at 223.

> In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Master Consolidated*, 575 N.E.2d at *syllabus*. Thus, to establish apparent authority in this case, Abdou must introduce evidence that Lexington manifested to KMAG that Chubb was authorized to bind it to the terms of the certificate. *See Zona*, 1999 WL 282666, at *4.

Ohio courts have consistently and repeatedly held,

> The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority.

*Logsdon*, 141 N.E.2d at 223 (quoted with approval in *Master Consolidated*, 575 N.E.2d at 822). Thus, in order to be bound under the doctrine of apparent authority, the principal must, "by his voluntary act place[] an agent in such a situation that a person of ordinary prudence, conversant with business usages, and the nature of the particular business, is justified in assuming that such agent is authorized to perform on behalf of his principal a particular act." *General Cartage & Storage Co. v. Cox*, 78 N.E. 371, 372 (Ohio 1906). *See also Alban Equipment Co. v. MPH Crane, Inc.*, 1989 WL 62860, at *3 (Ohio Ct. App. 4th Dist. June 2, 1989) ("[T]he important actions are those of the principal rather than the purported agent, thus the fact the person signing did so willingly is irrelevant."); *Cupac, Inc. v. Mid-West Ins. Agency, Inc.*, 626 F.Supp. 559, 561 (S.D. Ohio 1985) ("The touchstone of apparent authority is the principal's conduct toward a third party and not the agent's.").

Lexington argues that there is no evidence that Chubb possessed apparent authority to bind it to the certificates.[3] According to Lexington, it never conveyed to anyone that Chubb was

---

[3] The Court questions whether the certificate constitutes a "contract." The document itself provides in capital letters that it does "NOT CONSTITUTE A CONTRACT" and that it "CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER." Moreover, Chubb testified that he never intended to enter into a contract for umbrella coverage because Millikin rejected the coverage. Rather, he mistakenly indicated on the form that umbrella coverage existed because he copied information from

11

its agent.  Abdou points out that Chubb was a preferred vendor of insurance and that Chubb had previously placed umbrella coverage for Pump It Up with Lexington.  He further points out that when KMAG purchased Pump It Up, Chubb confirmed that KMAG would be assuming Millikin's policies.  According to Abdou, the signature block of the certificate demonstrates that Chubb was Lexington's agent.  Abdou also argues that all communication and billing occurred "solely through Imperial Credit Corporation and Chubb," which "created the clear appearance...that Chubb had authority to act on behalf of Lexington in placing coverage and handling payment...."  Abdou also notes that in June of 2011, Chubb again solicited umbrella coverage on behalf of Lexington.  That coverage, however, took effect after Abdou's injuries occurred.

       Upon review, the Court finds that Abdou fails to present sufficient evidence from which a reasonable trier of fact could conclude that Chubb possessed the apparent authority to bind Lexington.  The parties do not dispute that Lexington and Chubb had no contact. Nor do they dispute that KMAG had no contact with Lexington.  To the contrary, Sterling secured coverage from CRC, who is a wholesale producer of insurance.  Chubb testified that it communicated only with Sterling and its customers, *i.e.*, insurance consumers.  Moreover, the contents of the certificate, including the signature block, is not evidence of an agency relationship.  The certificate is not a Lexington document and nothing on the certificate would give a third-party any indication that Lexington clothed Chubb with the apparent authority to issue the document.  The majority of evidence Abdou points to consists of communications with Chubb.

---

       pervious years.  Moreover, there is no evidence that KMAG ever
       paid premiums for umbrella coverage.

Communications between KMAG and Chubb, however, do not provide any support for an agency relationship, because the Court must look to Lexington's conduct and manifestations in assessing apparent authority.  The only arguably relevant fact that Abdou points to is that Chubb, both previously and after Abdou's injuries, procured Lexington umbrella coverage.  This fact, standing alone, however, does not create a genuine issue of material fact.  The fact that Lexington may have insured Millikin and KMAG is not sufficient to create an agency relationship.  The Court finds that Lexington is entitled to summary judgment on the issue of agency.

Having concluded that no enforceable contract exists between Lexington and KMAG or Millikin and that no agency relationship exists between Chubb and Lexington, the Court need not reach Lexington's alternative argument that the insured's breach of the policy provisions removes coverage.

**CONCLUSION**

For the foregoing reasons, Lexington Insurance Company's Motion for Summary Judgment (Doc. 26) is GRANTED.

IT IS SO ORDERED.

                                                /s/ Patricia A. Gaughan  
                                                PATRICIA A. GAUGHAN  
Dated: 3/2/16                   United States District Judge